IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**JANA LATCHAM and CORNELIA KUEHL, Each Individually and on Behalf of all Others Similarly Situated** **PLAINTIFFS**

vs. No. 4:16-cv-582-BSM

**U.S. PIZZA COMPANY, INC.** **DEFENDANT**

**DECLARATION OF ATTORNEY JOSH SANFORD**

I, Josh Sanford, do hereby swear, affirm, and attest as follows, based upon my personal knowledge of the matters contained herein:

1. My name is Josh Sanford, and I am over the age of eighteen (18) and duly qualified to execute this declaration.

2. I am a resident and domiciliary of the State of Arkansas.

3. I am an attorney licensed in courts in the states of Arkansas, Colorado, Michigan and Texas; I manage the Sanford Law Firm, PLLC.

4. I have litigated and am currently litigating several other collective actions under the Fair Labor Standards Act ("FLSA") in the Courts of the Western and Eastern Districts of Arkansas, as well as in the Eastern and Western Districts of Texas, and the District of Colorado.

5. In each and every one of these cases, it has been my experience that mail delivery problems not only exist, but they are in fact pervasive. In some cases, the mail

problems have prevented some members of a putative class from joining the lawsuit when they later expressed their desire to join the case—but it was too late to participate.

6. An untold number of Notices sent by our firm are lost in the mail or returned undeliverable, even when the address is correct. Sometimes the returned envelope is not returned to us for more than 150 days from its first mailing to the class member.

7. Additionally, some Consents signed and mailed by members of the putative class are lost in the mail. I know this because in my other FLSA collective actions, some potential opt-in plaintiffs have called to follow up on our receipt of their Consents, only to discover that we never received them. Clearly, however, most people do not call to follow up after mailing their signed Consents, assuming that by putting their Consents in the mail, we will receive the Consents and join them in the lawsuit.

8. In fact, on May 15, 2013, and May 23, 2013, class members in one of our firm's other collective action lawsuits called our office because they had not received their Notices and Consents, which were mailed to them more than two months earlier. The addresses on file for these potential plaintiffs were correct, so their Notices and Consents were lost in the mail, and they only found out about the lawsuit from friends who had themselves received notice.

9. In another instance in April of 2013, a would-be opt-in plaintiff in another case called our offices to find out how the case was going, and at that time we discovered that we never received the Consent to Join that he had sent us about four weeks earlier.

10. In March of 2014, we received a returned envelope that contained a Notice and Consent in a collective action case; we mailed out the envelope in March of **2013**.

11. More recently, in May of 2015, we mailed Notice and Consent documents to a class in a collective action case in the Western District of Arkansas. We received several telephone calls from recipients of the postcards who requested the Notice and Consent documents because the original mailing did not reach them.

12. It is unknown how many total people who have wanted to join our firm's collective actions have failed to as a result of these problems. And if collective action is conditionally certified in this case, it is unknown how many potential members of the putative class will suffer the same fate. However, even one member failing to join the lawsuit through no fault of his or her own, but merely because the signed Consent gets lost in the mail, is too many.

13. Allowing Plaintiffs' counsel to send a follow-up postcard to any class members who have not responded to our offices within thirty (30) days after the mailing of the initial *Notice* would provide a fair and equitable solution to ensure that more members of the proposed class who want to join the lawsuit are able to. Moreover, this would not cause any prejudice to Defendant.

14. On July 17, 2014, we sent out Notice to a class in the Western District of Arkansas. Then **415 days** later—on September 5, 2015, two of the notices were returned to our office as undeliverable. Amazingly, on January 2, 2016, a full **535 days** later, yet another undelivered Notice envelope was returned.

15. In many of our class cases under the FLSA email is a much more effective and timely method to communicate with parties. It is my experience in representing plaintiffs over the past six years that email is the more reliable and efficient way to deliver written communication to putative class members.

16. One of the features that email provides as opposed to traditional mail is faster feedback if an incorrect address is used. That (generally) immediate feedback that an email is undeliverable is useful information to have when the intended recipient has a defined period of time within which he must respond.

17. The class of opt-ins would benefit by the ease and efficiency of a paperless notice and consent process (via email). PDF files that can be signed electronically on traditional computers and on mobile devices can be sent by Plaintiffs' counsel via email.

18. It is a practical benefit to many putative class members to be able to sign documents electronically and to transmit them via email from the cellphones. It is not a hardship on Defendant for potential opt-ins to receive Notice and Consent, and to return Consents to Join to Plaintiffs' counsel, in this manner.

19. The software that we use to obtain electronic signatures is through a website located at www.RightSignature.com. It is a subscription Internet service that allows us to send PDF documents to class members' email addresses, which they can open on their smartphones and/or computers and sign with their finger or mouse, respectively.

20. RightSignature is an easy and efficient means of obtaining signatures for plaintiffs and potential plaintiffs who are hard to reach or who do not have easy access

to computers, much less printers, scanners, or fax machines. Unlike computers, many individuals keep their smartphones with them at all times.

21. While RightSignature is an efficient way to obtain signatures, the process for completing a signature is not completely intuitive. After signing a document, RightSignature requires the signer to press "preview signature." Many signers believe that once they have pressed this option they have signed and submitted the document. In fact, RightSignature requires another step before it will return the signed document to the sender. The signer must press also press "submit signature" after he or she presses "preview signature." Many potential plaintiffs believe they have opted in to a lawsuit after the first step, when in fact they have not actually submitted a signed document.

22. It is for this reason that the electronic transmittal language that we have requested (as set out in Exhibit 3) is necessary.

23. More information about RightSignature is available at https://rightsignature.com/how-it-works/send.

24. In several collective actions that have been conditionally certified in the Eastern District of Arkansas in the past few months, Courts have blessed the "email-out, paperless consent-in" procedure that we have asked for in this case, and it has worked well.

**Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

Executed on this 2nd day of March, 2017.

*<u>/s/ Josh Sanford</u>*
**JOSH SANFORD**